UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DEMANDA HARDY, et al.,** | } |
| **Plaintiffs,** | } |
| v. | } Case No.: 5:15-cv-01526-MHH |
| **MID-SOUTH BELLS, LLC,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

This opinion concerns three proposed FLSA settlements. In their complaint, plaintiffs Demanda Hardy, Jamal Clark, and Rickey Green contend that their employer, defendant Mid-South Bells, LLC, violated provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. The parties have agreed to settle the plaintiffs' FLSA claims, and they have asked the Court to approve the proposed settlements. (Doc. 16). The Court will approve the FLSA settlements because the settlements are a fair and reasonable compromise of a bona fide dispute.

**I.    BACKGROUND**

Mid-South Bells owns and operates Taco Bell restaurants in Alabama, Tennessee, and Georgia. (Doc. 1, ¶ 12). The plaintiffs worked for one of Mid-South Bells' Taco Bell restaurants in Madison County, Alabama as non-exempt

hourly employees.  (Doc. 1, ¶¶ 1, 13, 14, 15, 16).[1]  The plaintiffs prepared food, cleaned equipment and facilities, and interacted with restaurant customers.  (Doc. 1, ¶ 16).

According to the plaintiffs, Mid-South Bells required Mr. Clark and Mr. Green to work approximately 50 hours per week and refused to compensate the men for hours worked after 1:30 a.m. during every closing shift.  (Doc. 1, ¶ 17).  Mid-South Bells required Ms. Hardy to work between 24 and 50 hours per week and refused to compensate her for hours worked after 1:30 a.m. during every closing shift.  (Doc. 1, ¶ 18).  During closing shifts, the plaintiffs would stay at the restaurant until 2:45 or 3:00 a.m., but Mid-South Bells paid the plaintiffs only for work until 1:30 a.m.  (Doc. 1, ¶ 21).  The plaintiffs complained to their supervisors, the store manager, and Mid-South Bells' regional manager that Mid-South Bells "denied [the] [p]laintiffs compensation, including overtime pay, by permitting and/or requiring [the] [p]laintiffs . . . to work off the clock."  (Doc. 1, ¶¶ 2, 19, 22). Based on these allegations, all three plaintiffs assert a claim for overtime violations under the FLSA and a common law claim for unjust enrichment.

---

[1] Ms. Hardy worked for Mid-South Bells from August 2013 until October 2014.  (Doc. 1, ¶ 13). Mr. Clark started working for Mid-South Bells in April 2013, and he was still employed as of September 3, 2015, which is the day that the plaintiffs filed their complaint.  (Doc. 1, ¶ 14).  Mr. Green worked for Mid-South Bells from October 2012 until April 2015.  (Doc. 1, ¶ 15).

(Doc. 1, ¶¶ 25-28; 33-38). Ms. Hardy also asserts a claim for minimum wage violations under the FLSA. (Doc. 1, ¶¶ 29-32).

In its answer to the plaintiffs' complaint, Mid-South Bells admits that the plaintiffs worked for the company, but Mid-South Bells denies that it failed to properly compensate the plaintiffs under the FLSA or that the company was unjustly enriched. (Doc. 5, ¶¶ 13–15, 26–28; 30–32; 34–38; *see also* Doc. 16, pp. 6–7).

For purposes of settlement, the parties reviewed Mid-South Bells' payroll and time records for each of the plaintiffs. (Doc. 16, ¶ 2). The plaintiffs then made settlement demands, which the parties represent were supported by plaintiffs' counsel's calculations based on the pay history and time records for each plaintiff. (Doc. 16, ¶ 2). Mid-South Bells has agreed to pay the plaintiffs an amount representing 100% of the claimed and disputed unpaid wages, overtime wages, liquidated damages, and unjust enrichment damages. (Doc. 16, ¶¶ 2–3). The settlement agreements also provide for attorney's fees for plaintiffs' counsel. (Doc. 16, ¶ 3). The parties have represented to the Court that they believe that their proposed settlement agreements reflect fair and reasonable compromises of their disputes. (Doc. 16, pp. 5–6).

On this record, the Court considers the parties' motion to approve the proposed settlement of the plaintiffs' FLSA claims.

## II.     DISCUSSION

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.' Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 207(a). Congress designed the FLSA "to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original). In doing so, Congress sought to protect "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).

If an employee proves that his employer violated the FLSA, then the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva*

*v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011).

Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim. To compromise a claim for unpaid wages, the parties must "present to the district court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353; *see also Hogan*, 821 F. Supp. 2d at 1281-82.[2]  "[T]he parties requesting

---

[2] In *Lynn's Food*, the Eleventh Circuit Court of Appeals explained:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages. The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

5

review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).  The information that the parties provide also should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp. 2d at 1282.  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement.  *Lynn's Food*, 679 F.2d at 1354; *see also Silva*, 307 Fed. Appx. at 351 (proposed settlement must be fair and reasonable).

Based on the Court's review of the proposed settlement agreements and the information that the parties submitted regarding the terms of the proffered settlement, the Court finds that there is a bona fide dispute between the parties, and the settlement terms that the parties have negotiated are fair and reasonable.  The parties agreed to settle the plaintiffs' claims in exchange for 100% of the plaintiffs' claimed and disputed unpaid wages, overtime wages, liquidated damages, and unjust enrichment damages.

---

679 F.2d at 1352-53 (footnotes omitted).  The Eleventh Circuit reiterated the import of *Lynn's Food* in *Nall v. Mal–Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013).

The Court also approves the negotiated attorney's fee included in the settlement amount for each plaintiff.  The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."  *Silva*, 307 Fed. Appx. at 351 (citing *Lynn's Food*, 679 F.2d at 1352); *see also Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 2d 1277, 1291 (N.D. Ala. 2014) (noting that even where payment of attorney's fees does not reduce the compensation negotiated for and payable to an FLSA plaintiff, "the court is required to review for fairness and approve the fee and expenses proposed to be paid by the defendants in the settlement.") (citing *Silva*, 307 Fed. Appx. at 349).  Plaintiffs' counsel submitted to the Court time records for the Court's review.  Based upon the information submitted to the Court, the Court finds that the fee amount included in each settlement agreement adequately compensates counsel for the time invested in the action.[3]  In addition, the negotiated fees do not compromise the plaintiffs' recovery.  Therefore, the compensation paid to the plaintiffs is "separate and distinct from the settlement agreement to pay [counsel's] fees and expenses." *Briggins*, 3 F. Supp. 2d at 1291.

---

[3] Plaintiffs' counsel agreed to reduce his total time and expenses by 50% to settle these FLSA claims.

In addition to the settlement amount, confidentiality provisions in FLSA settlement agreements require scrutiny. Typically, absent a showing of good cause, the Court does not allow the parties to file sealed or redacted FLSA settlement agreements because omitting the agreements from the public record can frustrate the goals of the FLSA. *See, e.g.*, *Stalnaker*, 293 F. Supp. 2d at 1264 (quoting *O'Neil*, 324 U.S. at 706 and discussing the public interest behind the FLSA). In this case, the Court permitted the parties to submit the proposed settlement agreements *in camera* for the Court's review because the agreements contain a confidentiality provision. The parties have represented to the Court that this is an isolated case and that the supervisor responsible for the FLSA violations no longer works for Mid-South Bells. (Doc. 16, p. 4). The Court accepts this joint representation. In addition, this settlement covers not only FLSA claims but also a state law claim. Therefore, in these circumstances, the Court will allow the parties to maintain the confidentiality provision in the settlement agreement.

The broad claim-release provisions contained in the settlement agreements normally would give the Court pause. *See Hogan*, 821 F. Supp. 2d at 1284 (stating that pervasive release language in an FLSA settlement is "overbroad and unfair" and should be "closely examined"). The Court makes an exception and approves those provisions in this case because the settlements cover the plaintiffs' state-law

claims for unjust enrichment.  The settlement of the unjust enrichment claim is a matter of private contract that requires no oversight from the Court.[4]

## III. CONCLUSION

For the reasons stated above, the Court approves the parties' proposed settlement of the plaintiffs' claims.  The Court concludes that there is a bona fide dispute regarding the plaintiffs' FLSA claims, and the terms that the parties have negotiated constitute a fair and reasonable resolution of that dispute.  The Court will enter a separate order dismissing the plaintiffs' claims with prejudice.

**DONE** and **ORDERED** this October 28, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[4] The Court also has taken into account the fact that the release does not embrace rights or claims that may arise after the plaintiffs sign the settlement agreements.  (*See* Settlement Agreement, ¶ 3).